RECEIVED

SEP 0 4 2014

AT 8:30 _____
WILLIAM T WALSH, CLERK

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| **IN RE: CAPACITORS ANTITRUST LITIGATION** | : : : : | FILED ELECTRONICALLY

MDL No. 2574 |

## RESPONSE OF PLAINTIFF eIQ ENERGY, INC. TO MOTION FOR TRANSFER AND COORDINATION FILED BY PLAINTIFFS CHIP-TECH, LTD. AND DEPENDABLE COMPONENT SUPPLY CORP. AND REQUEST FOR TRANSFER TO THE DISTRICT OF NEW JERSEY

eIQ Energy, Inc., the plaintiff in a pending direct purchaser antitrust class action

captioned *eIQ Energy, Inc. v. AVX Corp. et al.*, Civil No. 14-cv-4826-ES-MAH (D.N.J.), files

this Response to Plaintiffs Chip-Tech, Ltd. and Dependable Component Supply Corp.'s Motion

for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for

Coordinated or Consolidated Pretrial Proceedings, Dkt. No. 1 (the "Motion for Transfer").

eIQ Energy opposes transfer of its case to the Northern District of California and

respectfully requests that the Panel instead transfer all related actions to the District of New

Jersey for coordinated or consolidated proceedings.

## I. INTRODUCTION

Between July 18 and August 14, 2014, four direct-purchaser class actions were filed

asserting substantially similar antitrust claims against the major manufacturers of tantalum

capacitors, aluminum electrolytic capacitors and/or film capacitors (collectively, "Capacitor

Products"):

- *eIQ Energy, Inc. v. AVX Corp. et al.*, Civil No. 14-cv-4826-ES-MAH (D.N.J.) (the "*eIQ Energy*" action);

- *Chip-Tech, Ltd. v. Panasonic Corporation, et al.*, Case No. 4:14-03264-JD (N.D. Cal.) (the "*Chip-Tech*" action);

- *Dependable Component Supply Corp. v. Panasonic Corporation, et al.*, Case No. 3:14-cv-03300-JD (N.D. Cal.) (the "*Dependable*" action); and

- *Schuten Electronics Inc. v. AVX Corp. et al.*, Case No. 3:14-cv-03698 (N.D. Cal.) (the "*Schuten*" action).

On August 21, 2014, an indirect-purchaser class action also was filed, *Ellis et al. v. Panasonic Corporation et al.*, Case No. 3:14-cv-03815-MEJ (N.D. Cal.) (the "Indirect" action).

In each of these actions (collectively, the "Capacitor Antitrust Actions"), the plaintiffs allege a conspiracy to fix, raise, maintain or stabilize prices for certain Capacitor Products. Each Capacitor Antitrust Action alleges violations under Section 1 of the Sherman Act, 15 U.S.C. § 1; each is a class action seeking to recover overcharge damages sustained by plaintiffs and putative class members who purchased Capacitor Products directly or indirectly from a total of 33 defendants, comprising 16 groups of affiliated defendants.

All five cases are in the incipient stages of litigation. The Indirect action was filed only last week. In the direct-purchaser cases, counsel for plaintiffs in the *eIQ Energy*, *Chip-Tech*, *Dependable* and *Schuten* actions all have been arranging for service of process, negotiating stipulations to establish deadlines for responding to the complaints, and moving for admission *pro hac vice*.[1] Contrary to the suggestion in the Brief in Support of the Motion for Transfer (p. 9, at Part II.A), none of the Capacitor Antitrust Actions is procedurally more advanced than the others in any material way. Thus, no proposed transferee forum offers the efficiency benefits typically associated with centralizing in a district where the litigation is already well underway.

---

[1] Nearly all of the defendants who have entered into stipulations regarding service and responsive deadlines in the *Chip-Tech* and *Dependable* actions that have been named as defendants in the *eIQ Energy* action have agreed to enter into substantially identical stipulations in the District of New Jersey. The TDK defendants named as defendants in the District of New Jersey have agreed to enter into the same type of stipulation. In the next few weeks, it is expected that defendants named in both venues will have agreed to substantially the same stipulations with similar response dates.

2

*Cf. In re Bank of Am. Credit Prot. Mktg. & Sales Practices Litig.,* 804 F. Supp. 2d 1372, 1373 (J.P.M.L. 2011) (transferring to "where the first-filed and relatively most procedurally advanced action is pending" because the judge "has become familiar with the contours of this litigation by virtue of having ruled on defendants' motion to dismiss").

For the following reasons, transfer to the District of New Jersey would best promote judicial efficiency and serve the convenience of the parties and witnesses:

- Defendant Panasonic has its U.S. headquarters in Newark, New Jersey, where the *eIQ Energy* action is pending. Panasonic, one of the world's largest manufacturers of Capacitor Products, is expected to be the focus of intense scrutiny in this antitrust price-fixing litigation because it has apparently applied to the United States Department of Justice's leniency program under the auspices of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"). To secure the benefits provided by ACPERA, including criminal amnesty and limited civil liability, Panasonic must provide substantial cooperation to plaintiffs such as eIQ Energy in pursuit of their civil claims. Accordingly, Panasonic's witnesses and documents in the District of New Jersey, and its lawyers in New York City, are likely to play a crucial and prominent role throughout this litigation.

- The Honorable Esther Salas, currently presiding over the *eIQ Energy* action in the District of New Jersey, is a highly experienced jurist who has previously managed class actions, antitrust claims, and multidistrict litigation. She has nearly eight years of experience as a federal judge, while the judge proposed by the Motion for Transfer took the bench in the Northern District of California only a few months ago.

- The docket conditions in the District of New Jersey are more favorable than those in the Northern District of California, which only recently filled a "judicial emergency vacancy" in 2014. The District of New Jersey is well equipped to

manage this complex antitrust case, as it has done in the past with many similar cases.

- The District of New Jersey is a convenient and accessible forum for the parties and their counsel. Although the domestic parties are geographically dispersed, to date the great majority of the parties have retained counsel in the mid-Atlantic region, in or in close proximity to the District of New Jersey. And parties or witnesses needing to travel to the courthouse in Newark may choose from among its three international airports, which offer regular flights to virtually every metropolitan center in the U.S. and Asia.

## II. THE CAPACITOR ANTITRUST ACTIONS SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW JERSEY

In light of the identity of questions of law and fact in the Capacitor Antitrust Actions, and because it will serve the convenience of the parties and witnesses, Plaintiff eIQ Energy agrees that centralization is appropriate pursuant to 28 U.S.C. § 1407(a). To "promote the just and efficient conduct of [the] actions," *id.*, this Panel should transfer all Capacitor Antitrust Actions to the District of New Jersey for coordination or consolidation before the Honorable Esther Salas.

### A. The U.S. Headquarters of the ACPERA Applicant, Panasonic, Are Located in the District of New Jersey.

The Panel often has considered the location of documents and witnesses in selecting an appropriate transferee district. *See* MULTIDISTRICT LITIGATION MANUAL § 6:5 (West 2014); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 787 F. Supp. 2d 1355, 1357 (J.P.M.L. 2011) (transfer is appropriate to the district where "headquarters, witnesses and documents" are located). Sometimes multidistrict litigation has a singular geographic focal point that provides a natural location for transfer. *See, e.g., In re Long-Distance Tel. Serv. Fed. Excise*

4

*Tax Refund Litig.*, 469 F. Supp. 2d 1348, 1350 (J.P.M.L. 2006) (centralizing in the District of Columbia because "most, if not all, discovery will likely come from the federal Government and documents and witnesses are likely to be in or near the District of Columbia"). But not so here, where the parties' headquarters, likely witnesses and potentially relevant documents are geographically dispersed.[2]

Nonetheless, the District of New Jersey has the strongest nexus to this litigation because it is the location of the U.S. headquarters of Defendant Panasonic Corporation of North America, which reportedly has applied to the DOJ's leniency program. *See eIQ Energy* Compl. ¶¶ 32, 103. Under ACPERA, as the leniency applicant Panasonic may receive full immunity from criminal prosecution and limitations from liability in related civil proceedings, *provided* that Panasonic provides substantial cooperation in the civil proceedings. *See* Pub.L. No. 108–237, tit. II, §§ 213, 118 Stat. 661, 665–669.

Panasonic's cooperation with plaintiffs' counsel will have a considerable impact on this litigation – and importantly for the Panel's purposes, it will have significant practical implications. Such cooperation will place Panasonic's role in the alleged cartel front and center in these proceedings, and it will make Panasonic's documents and witnesses the focus of intense scrutiny from the outset of this case, continuing throughout discovery and at trial. Accordingly, Panasonic's U.S. headquarters in Newark, New Jersey – less than one mile from the U.S.

---

[2] Seven parties or an affiliated defendant have U.S. headquarters located on the East coast: AVX (SC); Chip-Tech (NY); Dependable (FL); KEMET (SC); Panasonic (NJ); TDK (NY); and Vishay (PA). Eight have U.S. headquarters located in northern or southern California: eIQ Energy; Elna; Hitachi; Matsuo; NEC-Tokin; Samsung; Sanyo; and ROHM. Five have U.S. headquarters located in Illinois: Nichicon; Nippon Chemi-Con/United Chemi-Con; Rubycon; Schuten; and Taiyo-Yuden. Defendant Toshin Kogyo is based in Japan, with no U.S. affiliate. The plaintiffs in the Indirect action are residents of 21 different states spanning the nation.

Courthouse where the *eIQ Energy* action is pending – will be the center of gravity of this litigation. And because Panasonic's cooperation will be provided through its counsel, it is also significant that Panasonic's attorneys are from the New York City office of Winston & Strawn LLP, located only a few minutes from Newark. These considerations weigh heavily in favor of centralizing this litigation in the District of New Jersey.

**B.     Judge Salas of the District of New Jersey Is the Most Experienced Proposed Transferee Judge.**

The Panel has consistently looked "for a transferee district with the capacity and experience to steer [the] litigation on a prudent course." *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004). The experience of the proposed transferee judge is often a determining factor. *See, e.g., In re Mirena IUD Products Liab. Litig.*, 938 F. Supp. 2d 1355, 1358 (J.P.M.L. 2013) (transferring to "an experienced transferee judge who we are confident will steer this litigation on a prudent course"); *In re African-American Slave Descendants Litig.*, 231 F. Supp. 2d 1357, 1358 (J.P.M.L. 2002) (transferee forum proper where "the judge assigned to the action pending in this district is a seasoned jurist who can steer this litigation on a steady and expeditious course").

As this Panel has noted, the Honorable Esther Salas of the United States District Court for the District of New Jersey has ample experience as both a federal magistrate judge and a district court judge. *In re Vehicle Carrier Servs. Antitrust Litig.*, 978 F. Supp. 2d 1382, 1383 (J.P.M.L. 2013) (Judge Salas is "an experienced transferee judge").[3] During nearly eight years on the federal bench, she has handled a variety of complex matters, including numerous class

---

[3] *See* FJC Biography, available at:
http://www.fjc.gov/servlet/nGetInfo?jid=3377&cid=999&ctype=na&instate=na.

actions[4] as well as antitrust claims.[5] Judge Salas also has MDL experience; she earlier presided over the *In re Ford Motor Co. E-350 Van Products Liability Litigation*, MDL No. 1687, in which she issued a lengthy opinion addressing class certification.[6] And currently, Judge Salas is ably managing *In re Vehicle Carrier Services Antitrust Litigation*, MDL No. 2471.

The *Chip-Tech* and *Dependable* movants suggest that Judge Salas's oversight of the *Vehicle Carrier Services Antitrust Litigation* renders her an inferior transferee judge for this MDL. Motion for Transfer ¶ 7.j. And yet, as of August 15, 2014, of the 220 judges currently overseeing multidistrict litigation, nearly 25% of them (52/220) were simultaneously managing more than one MDL at a time, and of these nearly 30% were handling three or more MDLs at the

---

[4] *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, CIV.A. 08-2177 ES, 2014 WL 3667213 (D.N.J. July 23, 2014); *In re Par Pharm. Sec. Litig.*, CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013); *Martin v. Prudential Ins. Co. of Am.*, CIV.A. 12-6208 ES, 2013 WL 3354431 (D.N.J. July 2, 2013); *Smith v. Honeywell Int'l Inc.*, CIV.A. 10-3345 ES, 2013 WL 2181277 (D.N.J. May 20, 2013); *Tatum v. Chrysler Grp. LLC*, CIV.A. 10-4269 ES, 2012 WL 6026868 (D.N.J. Dec. 3, 2012); *Worthington v. Bayer Healthcare, LLC*, CIV.A. 11-2793 ES, 2012 WL 1079716 (D.N.J. Mar. 30, 2012); *Santomenno v. Transamerica Life Ins. Co.*, CIV.A. 11-736 ES, 2012 WL 1113615 (D.N.J. Mar. 30, 2012); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, CIV.A. 03-4558, MDL 1687, 2012 WL 379944 (D.N.J. Feb. 6, 2012); *Freid v. Nat'l Action Fin. Servs., Inc.*, CIV.A. 10-2870 ES, 2011 WL 6934845 (D.N.J. Dec. 29, 2011); *Glass v. BMW of N. Am., LLC*, CIV.A. 10-5259 ES, 2011 WL 6887721 (D.N.J. Dec. 29, 2011); *Kowalski v. YellowPages.com, LLC*, CIV.A. 09-2382 PGS, 2010 WL 3323749 (D.N.J. Aug. 18, 2010), *report and recommendation adopted*, CIV.A. 09-2382 PGS, 2010 WL 3810156 (D.N.J. Sept. 22, 2010).

[5] *BanxCorp v. Bankrate Inc.*, CIV.A. 07-3398 ES, 2012 WL 3133786 (D.N.J. July 30, 2012), *modified on reconsideration*, CIV.A. 07-3398 ES, 2012 WL 3988182 (D.N.J. Sept. 11, 2012).

[6] *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, CIV.A. 03-4558, 2012 WL 379944 (D.N.J. Feb. 6, 2012).

7

same time.[7]  Far from being unusual, assigning a second MDL to Judge Salas would be consistent with this Panel's history of transferring cases to capable, experienced judges with a track record of successful MDL management.

Judge Salas's substantial experience as a federal court judge, including considerable MDL and class-action experience, is a significant asset that will promote the just and efficient conduct of these actions. By contrast, the other potential transferee judge, the Honorable James Donato (N.D. Cal.), only began hearing cases a few months ago,[8] when he was appointed to fill a "judicial emergency vacancy" in the Northern District of California. *See* Response to Question No. 15, Senator Chuck Grassley's Questions for the Record directed to James Donato, Nominee, U.S. District Judge for the Northern District of California, available at http://www.judiciary.senate.gov/imo/media/doc/091113QFRs-Donato.pdf ("I have been advised that the Northern District of California has a substantial case load and that the seat I would take, if I am fortunate enough to be confirmed, has been deemed a judicial emergency vacancy.") (Ex. A).

## C.     The District of New Jersey Is Well Equipped to Preside Over This Litigation.

The District of New Jersey "is well equipped with the resources that this complex antitrust docket is likely to require." *In re Hypodermic Products Antitrust Litig.*, 408 F. Supp. 2d

---

[7] *See* MDL Statistics Report - Distribution of Pending MDL Dockets by District (8/15/2014), available at:
http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-15-2014.pdf.

[8] *See* FJC Biography, available at:
http://www.fjc.gov/servlet/nGetInfo?jid=3505&cid=999&ctype=na&instate=na.

8

1356, 1357 (J.P.M.L. 2005); *see also In re Sprint Premium Data Plan Mktg. & Sales Practices Litig.*, 777 F. Supp. 2d 1349, 1351 (J.P.M.L. 2011) (noting the District of New Jersey "has a great deal of experience serving as a transferee court yet has a manageable MDL docket"). Indeed, this Court has previously transferred many complex antitrust actions to New Jersey. *See, e.g., Vehicle Carrier,* 978 F. Supp. 2d 1382; *In re Lipitor Antitrust Litig.*, 856 F. Supp. 2d 1355 (J.P.M.L. 2012); *Hypodermic Products*, 408 F. Supp. 2d at 1357; *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005); *In re Neurontin Antitrust Litig.*, 217 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002); *In re K-Dur Antitrust Litig.*, 176 F. Supp. 2d 1377, 1378 (J.P.M.L. 2001); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 930 (J.P.M.L. 1980).

Moreover, the docket conditions in the District of New Jersey favor consolidation in that District over the Northern District of California. Statistics show that the District of New Jersey has fewer weighted filings per judge (583 vs. 615), a faster median time from filing to disposition in civil actions (7.5 months vs. 8.1 months), and a lower percentage of civil cases more than three years old (5.5% vs. 7.1%).[9]

While both districts carry a considerable case load, it appears the Northern District of California is particularly burdened – so much so that Judge Donato's recent appointment in 2014 filled a "judicial emergency vacancy." *See* Ex. A, Response to Question No. 15.

---

[9] U.S. District Court – Judicial Caseload Profile, available at:
http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistic s/2014/district-fcms-profiles-march-2014.pdf&page=66.

**D.     The District of New Jersey Is Easily Accessible for Counsel and Geographically Diverse Parties.**

As this Panel has observed, "[t]he ease of accessibility … makes the District of New Jersey a good choice for transferee district." *Vehicle Carrier*, 978 F. Supp. 2d at 1383. *See also Ins. Brokerage*, 360 F. Supp. 2d at 1373 ("[T]he district offers an accessible metropolitan location.").

To date, the great majority of the parties in the Capacitor Antitrust Actions have retained counsel from within the New York City—Philadelphia—Washington D.C. corridor. Specifically, all four direct-purchaser plaintiffs and eleven of the sixteen defendant groups have retained counsel in or near the District of New Jersey.[10]  This includes movant Chip-Tech, whose Newark-based counsel has particularly strong connections to the District of New Jersey.[11]  All of

---

[10] These include: AVX (Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. in Washington, D.C.); Chip-Tech (Lite DePalma Greenberg, LLC in Newark, NJ and Philadelphia, PA; Berger & Montague, P.C. in Philadelphia, PA); Dependable (same); eIQ Energy (undersigned NJ and PA counsel); Elna (Wilmer Cutler Pickering Hale and Dorr LLP in Washington, D.C.); Hitachi (Wilson Sonsini Goodrich & Rosati in New York, NY and Washington, D.C.); NEC Tokin (Gibson Dunn & Crutcher LLP in Washington, D.C.); Panasonic/Sanyo (Winston & Strawn LLP in New York, NY); Rubycon (Hunton & Williams LLP in Washington, D.C.); Samsung (Covington & Burling LLP in Washington, D.C.); Schuten (Cohen Milstein Sellers & Toll PLLC in New York, NY and Washington, D.C.); TDK (Morgan Lewis & Bockius LLP in Washington, D.C.); Taiyo Yuden (Weil, Gotshal & Manges LLP in New York, NY); United Chemi-Con (Cadwalader Wickersham & Taft LLP in Washington, D.C.); and Vishay (Pepper Hamilton LLP in Philadelphia, PA).

[11] Allyn Z. Lite of Lite DePalma Greenberg, LLC is a former Clerk of Court for the District of New Jersey and the author of *New Jersey Federal Practice Rules*, a practice guide providing commentary and annotations to the District of New Jersey's Local Rules. *See* http://www.litedepalma.com/?t=3&A=7288&p=6942&format=xml.

10

these counsel easily can travel to and from Newark in a single day, providing significant costs savings for their clients.

Of the 14 defendant groups that have retained counsel, only three are thus far without counsel of record in or nearby the District of New Jersey.[12] Counsel for the plaintiffs in the Indirect action are principally from the center of the country (Colorado, Arkansas, Missouri and Tennessee, with local counsel in southern California), and so are roughly equidistant from the proposed transferee districts.

For those who must travel from a greater distance, three major international airports serve Newark (Newark Liberty International Airport, LaGuardia International Airport, and John F. Kennedy International Airport), allowing parties and witnesses to travel to and from the District with relative ease. Newark International Airport offers nonstop flights to Japan, where most of the foreign defendants are headquartered; it also offers nonstop flights to various parts of the United States where other parties in this matter are located, including northern and southern California, Illinois, South Carolina, and Florida. In short, the District of New Jersey "is an accessible location that will be geographically convenient for many of this docket's litigants, witnesses and counsel," weighing in favor of transfer to that District. *Hypodermic Products*, 408 F. Supp. 2d at 1357.

---

[12] KEMET and ROHM have thus far retained counsel only in San Francisco, California. But KEMET's counsel, Pillsbury Winthrop Shaw Pittman LLP, has offices in New York City and Washington, D.C., with antitrust practitioners in both cities. ROHM's counsel, O'Melveny & Meyers LLP, also has antitrust practitioners in its New York City offices. Nichicon has retained the Chicago office of K&L Gates LLP, a firm with experienced antitrust practitioners in its Washington, D.C. office. To date, the identity of counsel is unknown for two groups of defendants: Matsuo and Toshin-Kogyo.

**E.     The Location of Related Grand Jury Proceedings Should Be Given Little Weight.**

The *Chip-Tech* and *Dependable* movants urge transfer to the Northern District of California, citing the grand jury proceedings in that district. However, the location of a grand jury investigation is an inappropriate reason for choosing a forum for transfer when the litigation has no other unique links to that location.

Absent some other substantial relationship between the forum, the parties or the underlying actions, this Panel has held consistently that the locus of a related governmental investigation is not a dispositive factor in selecting the transferee forum.[13]  Indeed, in *Corn Derivatives*, 486 F. Supp. at 930-31, this Panel transferred the actions to the District of New Jersey despite the presence of a grand jury investigation in the Northern District of California. *See also In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005) (transferring to Eastern District of Pennsylvania despite federal grand jury proceedings in the Northern District of California); *In re Elec. Carbon Products Antitrust Litig.*, 259 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003) (transferring actions to District of New Jersey despite government investigation and federal grand jury proceedings in Eastern District of Pennsylvania); *In re Flat Glass Antitrust Litig.*, MDL No. 1200 (J.P.M.L. Dec. 4, 1997) (Ex. B) (transferring to Western District of Pennsylvania although separate grand jury investigations occurred in two other federal

---

[13] There is no merit to the suggestion that choosing the forum of the grand jury is preferable because grand jury documents will be located there. It is uncommon for a grand jury or the Justice Department to produce documents relating to the grand jury investigation to private litigants in related civil proceedings. Rather, most documents and other discovery in such civil litigation are produced by the parties pursuant to the Federal Rules of Civil Procedure. Moreover, in modern litigation practice, documents are produced electronically on CDs, DVDs, or other portable electronic storage media. Proximity to the grand jury has no effect on the effort or expense involved in such document production.

districts, as noted in *In re Flat Glass Antitrust Litig.,* 288 F.3d 83, 86 (3d Cir. 2002)); *In re Residential Doors Antitrust Litig.*, MDL 1039 (J.P.M.L. Dec. 1, 1994) (Ex. C) (transferring to Eastern District of Pennsylvania, although criminal proceedings occurred in Florida, as noted in *In re Residential Doors Antitrust Litig.*, 900 F. Supp. 749, 751 (E.D. Pa. 1995)); *In re Catfish Antitrust Litig.*, MDL 928 (J.P.M.L. June 25, 1992) (Ex. D) (transferring to Northern District of Mississippi despite grand jury proceedings elsewhere; the location of grand jury proceedings "is not in and of itself determinative"); *In re Res. Exploration, Inc., Sec. Litig.*, 483 F. Supp. 817, 822 (J.P.M.L. 1980) (transferring to forum where parties had established a document depository, despite the fact that grand jury investigation and criminal proceedings had taken place elsewhere); *In re Wiring Device Antitrust Litig.*, 444 F. Supp. 1348, 1350-51 (J.P.M.L. 1978) (transferring related actions to Eastern District of New York, despite the fact that grand jury materials were located in District of Connecticut); *In re Sugar Indus. Antitrust Litig. (E. Coast)*, 437 F. Supp. 1204, 1207-08 (J.P.M.L. 1977) (transferring to Eastern District of Pennsylvania despite the presence of grand jury documents and potential witnesses located in Eastern District of New York); *In re Gov't Auto Fleet Sales*, 328 F. Supp. 218, 219-20 (J.P.M.L. 1971) (transferring to Northern District of Illinois despite grand jury proceedings elsewhere).

The rationale is clear. When a substantial number of parties and witnesses are located in or near the judicial District in which a grand jury or other governmental investigation is pending, then there is good reason to consider transfer to that District. In cases such as this, however, where the plaintiffs, the domestic defendants, witnesses, documents, and other information are scattered throughout the United States, then the efficiencies of having civil and criminal proceedings take place in the same forum evaporate, and other considerations should govern the Panel's transfer decision.

As noted above, Panasonic, which must provide timely cooperation pursuant to its ACPERA obligations in order to be relieved of treble damages and joint and several liability, is headquartered in Newark, New Jersey.  Transfer to the District of New Jersey will thus greatly facilitate the production of documents, as well as key witness interviews and depositions.

## III.    CONCLUSION

For the foregoing reasons, eIQ Energy opposes the transfer of its lawsuit to the Northern District of California, and respectfully requests that the Panel transfer the Capacitor Antitrust Actions to the District of New Jersey.

Dated: August 28, 2014

By:       _/s/ Roberta D. Liebenberg_

Roberta D. Liebenberg
Donald L. Perelman
Gerard A. Dever
Paul Costa
Ria Momblanco
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, Pennsylvania 19107
Telephone:  (215) 567-6565
Facsimile:  (215) 568-5872
rliebenberg@finekaplan.com
dperelman@finekaplan.com
gdever@finekaplan.com
pcosta@finekaplan.com
rmomblanco@finekaplan.com


By:     _/s/ Howard J. Sedran_

Howard J. Sedran
Austin B. Cohen
Keith J. Verrier
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone:  (215) 592-1500
Facsimile:  (215) 592-4663

hsedran@lfsblaw.com
acohen@lfsblaw.com
kverrier@lfsblaw.com

W. Daniel "Dee" Miles, III
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
218 Commerce Street
Post Office Box 4160 (36103)
Montgomery, Alabama 36104
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
dee.miles@beasleyallen.com

Dennis J. Drasco
Arthur M. Owens
**LUM, DRASCO & POSITAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 403-9000
Facsimile: (973) 403-9021
ddrasco@lumlaw.com
aowens@lumlaw.com

*Attorneys for Individual and Representative*
*Plaintiff eIQ Energy, Inc.*

15

Exhibit A

Senator Chuck Grassley
Questions for the Record

James Donato
Nominee, U.S. District Judge for the Northern District of California

1.  In 2006 the San Francisco Bar Association sent a letter to Senators Feinstein,
    Specter, Boxer, and Leahy opposing the nomination of Samuel Alito to the Supreme
    Court of the United States. You were an officer of the San Francisco Bar
    Association. Can you explain your personal objections to Justice Alito's
    nomination?

    Response: The referenced letter was submitted on behalf of the Bar Association of San
    Francisco in January 2006. I did not prepare the letter or undertake any research for it,
    and I did not take a personal position for or against the confirmation of Justice Alito.

2.  The San Francisco Bar Association particularly had an issue with Justice Alito's
    view of Congressional power under the commerce clause. In your view are there
    any limitations to Congressional power under the commerce clause?

    Response: Several Supreme Court decisions have found limits on Congress's power to
    regulate non-economic activity under the Commerce Clause. *See, e.g., United States v.
    Morrison*, 529 U.S. 598 (2000); *United States v. Lopez*, 514 U.S. 549 (1995). These
    cases stand for the proposition that non-economic activity with only an attenuated effect
    on interstate commerce cannot be regulated pursuant to the Commerce Clause. If
    confirmed, I will follow Supreme Court precedent without regard to any views I might or
    might not have.

3.  There was a recent decision by the New Mexico Supreme Court[1] where the Court
    held that a photographer improperly discriminated against a gay couple when she
    refused to take photos for their commitment ceremony for religious reasons and, as
    the Court stated in its opinion, the Respondents are, "now are compelled by law to
    compromise the very religious beliefs that inspire their lives."[2]

---

[1] *Elane Photography, LLC v. Willock*, 2013 WL 4478229 (N.M. Aug. 22, 2013).

[2] *Id.*, Para. 90.

a. **How would you approach this issue if a party in a similar case claimed this was a Freedom of Speech violation? Particularly with respect to a creative and expressive art form such as photography?**

Response: The Freedom of Speech guarantee is one of the most important guarantees in the Constitution. If confirmed as a District Judge, I would approach this issue by following applicable Supreme Court and Ninth Circuit precedent, and applying it to the admissible evidence in the record. Since this issue might come before me if I am confirmed, I cannot comment further on it.

b. **Do you think the New Mexico state legislature, by requiring companies that advertise publicly to act in this way, compels the company to speak the government's message?**

Response: The Supreme Court has issued decisions on compelled speech. These decisions include *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47 (2006), *Wooley v. Maynard*, 430 U.S. 705 (1977), and other cases. If confirmed, I would follow this and other applicable precedent, without regard to any personal thoughts or views I might or might not have.

c. **How would you respond if an individual or company in this circumstance raised a Free Exercise claim?**

Response: The Free Exercise guarantee is also a critically important guarantee in the Constitution. If confirmed, I would respond by identifying applicable Supreme Court and Ninth Circuit precedent, and applying it to the admissible evidence in the record. No other factors would affect my determination of the issue. Since this issue might come before me if I am confirmed, I cannot comment further on it.

4. **How will you use the Sentencing Guidelines to guide you in criminal cases?**

Response: The Sentencing Guidelines are an important tool to achieve uniformity in criminal sentences. If confirmed, I would treat the Sentencing Guidelines with substantial deference in determining appropriate sentences.

5. **Some have contended that a judge should have empathy for those who appear before them. My concern is that when someone suggests a judge should have empathy, they are really suggesting the judge should place their thumb on the scales of justice to tilt it in the favor of the proverbial little guy. In your personal opinion, is it ever the role of a judge to favor one party over another?**

Response: No.

6.   **What is the most important attribute of a judge, and do you possess it?**

Response: I believe the most important attribute of a judge is the commitment to upholding the impartial rule of law in all cases. I possess that attribute.

7.   **Please explain your view of the appropriate temperament of a judge. What elements of judicial temperament do you consider the most important, and do you meet that standard?**

Response: In my view, appropriate judicial temperament consists of decisiveness, transparency in decision-making, impartiality, civility to litigants and counsel, the ability to listen carefully, a calm demeanor, and an unwavering commitment to the rule of law. I meet these standards.

8.   **In general, Supreme Court precedents are binding on all lower federal courts, and Circuit Court precedents are binding on the district courts within the particular circuit. Are you committed to following the precedents of higher courts faithfully and giving them full force and effect, even if you personally disagree with such precedents?**

Response: Yes.

9.   **At times, judges are faced with cases of first impression. If there were no controlling precedent that was dispositive on an issue with which you were presented, to what sources would you turn for persuasive authority? What principles will guide you, or what methods will you employ, in deciding cases of first impression?**

Response: In a matter of first impression involving a statute, I would turn first and foremost to the language of the statute. If the text is clear, my inquiry would be at an end. If for some reason the statutory text did not lead to a clear answer, I would look to the structure and context of the provision, and turn to precedents of the Supreme Court and the Ninth Circuit interpreting similar provisions.

10.  **What would you do if you believed the Supreme Court or the Court of Appeals had seriously erred in rendering a decision? Would you apply that decision or would you use your best judgment of the merits to decide the case?**

Response: As a District Judge, I would be bound to follow all Supreme Court and Ninth Circuit precedent and would apply it, regardless of whether I thought it was correctly decided or not.

11.  **Under what circumstances do you believe it appropriate for a federal court to declare a statute enacted by Congress unconstitutional?**

Response: A district court should avoid reaching constitutional questions whenever possible. If that cannot be avoided, a district court must presume that a statute passed by

Congress is constitutional and should be declared unconstitutional only if it clearly conflicts with the Constitution as interpreted by the Supreme Court and relevant circuit courts, or if Congress clearly acted beyond its constitutional authority.

12. **What assurances or evidence can you give this Committee that, if confirmed, your decisions will be grounded in precedent and the text of the law rather than any underlying political ideology or motivation?**

Response: If confirmed, my duty as a District Judge would be to decide every case solely on the basis of the plain text of the law, applicable precedent and the admissible evidence in the record. I will fulfill that duty without regard to any ideology or motivations that I might or might not have.

13. **What assurances or evidence can you give the Committee and future litigants that you will put aside any personal views and be fair to all who appear before you, if confirmed?**

Response: The rule of law and equal justice under law are the bedrock principles of our legal system. I have been committed to upholding those principles throughout my legal career, starting with my service as judicial law clerk to the Hon. Procter R. Hug, Jr., United States Circuit Judge. I can assure the Committee and future litigants that I will decide every case and issue presented to me on the basis of the facts and applicable law, and without regard to any personal views that I may or may not have.

14. **In your view, is it ever proper for judges to rely on foreign law, or the views of the "world community", in determining the meaning of the Constitution? Please explain.**

Response: No.

15. **If confirmed, how do you intend to manage your caseload?**

Response: I have been advised that the Northern District of California has a substantial case load and that the seat I would take, if I am fortunate enough to be confirmed, has been deemed a judicial emergency vacancy. If confirmed, I will manage my caseload by maintaining reasonable and efficient schedules in all matters, deciding motions and other issues promptly, making appropriate use of Magistrate Judges, and encouraging dispute resolution through mediation and other services.

16. **Do you believe that judges have a role in controlling the pace and conduct of litigation and, if confirmed, what specific steps would you take to control your docket?**

Response: Judges play a critical role in ensuring fair and prompt resolution of disputes. If confirmed, I would implement the measures discussed in Question 15 above to manage my docket, and use the procedures provided for in the Federal Rules of Civil Procedure

and Criminal Procedure to manage cases.

17.    **You have spent your entire legal career as an advocate for your clients. As a judge, you will have a very different role. Please describe how you will reach a decision in cases that come before you and to what sources of information you will look for guidance. What do you expect to be most difficult part of this transition for you?**

Response: If confirmed, I will resolve legal issues based on applicable Constitutional and statutory provisions, along with precedent from the Supreme Court and the Ninth Circuit. I will resolve factual disputes on the basis of admissible evidence in the record. With respect to challenges in the transition, I have been fortunate in my 23 years of civil practice to have worked on a broad array of federal claims and issues, including class actions and multi-district cases, in every phase of litigation from the complaint to judgment, verdict or settlement. While I will need to familiarize myself with areas of the law where I have had less experience, such as criminal law, I will prepare through diligent and dedicated work, and will have substantial resources to assist me in achieving a smooth transition.

18.    **According to the website of American Association for Justice (AAJ), it has established a Judicial Task Force, with the stated goals including the following: "To increase the number of pro-civil justice federal judges, increase the level of professional diversity of federal judicial nominees, identify nominees that may have an anti-civil justice bias, increase the number of trial lawyers serving on individual Senator's judicial selection committees".**

    a.    **Have you had any contact with the AAJ, the AAJ Judicial Task Force, or any individual or group associated with AAJ regarding your nomination? If yes, please detail what individuals you had contact with, the dates of the contacts, and the nature of the communications.**

        Response: No.

    b.    **Are you aware of any endorsements or promised endorsements by AAJ, the AAJ Judicial Task Force, or any individual or group associated with AAJ made to the White House or the Department of Justice regarding your nomination? If yes, please detail what individuals or groups made the endorsements, when the endorsements were made, and to whom the endorsements were made.**

        Response: No.

19.    **Please describe with particularity the process by which these questions were answered.**

Response: I received these questions from the Department of Justice and prepared my responses. I discussed my responses with a representative of the Department of Justice, and I authorized the Department of Justice to submit my responses to the Committee.

**20. Do these answers reflect your true and personal views?**

Response: Yes.

## Senator Lee

## Questions for the Record Nominations Hearing (10:30 AM, Sept. 11, 2013)

### James Donato

1. **It is my understanding that while you were serving as a board member of the Bar Association of San Francisco, the Association sent a letter to Senators Feinstein, Boxer, Specter, and Leahy in opposition to the confirmation of Justice Alito to the Supreme Court of the United States.**

   a. **Did you oppose confirmation of Justice Alito to the U.S. Supreme Court and, if so, on what basis?**

      Response: The referenced letter was submitted on behalf of the Bar Association of San Francisco in January 2006. I did not prepare the letter and did not take a personal position for or against the confirmation of Justice Alito.

   b. **Did you participate in the drafting of the letter?**

      Response: No.

   c. **Did you agree with the contents of that letter?**

      Response: I did not prepare the letter or undertake any research or analysis of the issues discussed in it, and consequently have no views on the contents of the letter.

   d. **Did you express any opposition or support within the association with respect to the contents of that letter?**

      Response: The letter reports that 23 directors voted to approve it, two voted against it, one abstained and two did not vote. I do not recall specifically how I voted, but it is likely I voted to send the letter out of deference to the committee that researched and prepared it.

2. **The Bar Association letter asserts that Justice Alito does not properly understand "the Court's role to protect the personal rights of individuals and a respect for and sensitivity to the respective powers and reciprocal responsibilities of the Congress,**

1

**the Court, and the Executive, federal-state relations, and limits on governmental power."**

a. **What is your understanding of Justice Alito's understanding of "the Court's role to protect the personal rights of individuals and a respect for and sensitivity to the respective powers and reciprocal responsibilities of the Congress, the Court, and the Executive, federal-state relations, and limits on governmental power"?**

Response: I did not prepare the letter or undertake any research or analysis of Justice Alito's opinions on those issues, nor have I studied Justice Alito's record on the Supreme Court. Although I do not have a substantive understanding of Justice Alito's views on these issues, if confirmed, I will follow any binding Supreme Court precedent reflecting Justice Alito's views on these or any other issues.

b. **What are your views on "the Court's role to protect the personal rights of individuals and a respect for and sensitivity to the respective powers and reciprocal responsibilities of the Congress, the Court, and the Executive, federal-state relations, and limits on governmental power"?**

Response: The United States Supreme Court has addressed these issues. For example, the Supreme Court has established that Congress's authority under the Commerce Clause is broad but not unlimited. *See United States v. Morrison*, 529 U.S. 598 (2000); *United States v. Lopez*, 514 U.S. 549 (1995). The Supreme Court has also recognized that the President's powers to issue executive orders or take executive actions are circumscribed by the Constitution and acts of Congress. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). With respect to federal-state relations, the Supreme Court has held that "the Tenth Amendment confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States." *New York v. United States*, 505 U.S. 144, 157 (1992). The Supreme Court has applied this important constitutional limitation to hold that the authority to determine qualifications for state-court judges and other state government officials is, among other powers, "a power reserved to the States under the Tenth Amendment and guaranteed them by that provision of the Constitution under which the United States 'guarantee[s] to every State in this Union a Republican Form of Government.'" *Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991). If I am confirmed as a District Judge, I will faithfully follow Supreme Court and Ninth Circuit precedent on these issues.

**c. How do your views on these issues differ from those of Justice Alito?**

Response: I have not undertaken any research or analysis of Justice Alito's views on these issues. If I am fortunate enough to be confirmed as a District Judge, I will follow Supreme Court precedent on these and all other issues, without regard to any personal views I may or may not have.

Questions for the Record
Senator Ted Cruz

James Donato
Nominee, U.S. District Judge for the Northern District of California

**Describe how you would characterize your judicial philosophy, and identify which US Supreme Court Justice's judicial philosophy from the Warren, Burger, or Rehnquist Courts is most analogous with yours.**

Response: I believe a judge should be decisive, transparent in decision-making, impartial, civil and respectful to litigants and counsel, a good listener, should maintain a calm demeanor, and have an unwavering commitment to the rule of law and to following Supreme Court precedent. I have not undertaken a substantive study of the Justices of the Warren, Burger or Rehnquist Courts, but I believe all of the Justices in those Courts were committed to similar principles and I therefore cannot identify a particular Justice most analogous with my views.

**Do you believe originalism should be used to interpret the Constitution? If so, how and in what form (i.e., original intent, original public meaning, or some other form)?**

Response: If confirmed as a District Judge, I will follow Supreme Court precedent where the Court used originalism to interpret the Constitution. For example, the Supreme Court recently held that the public understanding of a legal text in the time after enactment is a "critical tool of constitutional interpretation." *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008). I will follow this and all other Supreme Court precedent.

**If a decision is precedent today while you're going through the confirmation process, under what circumstance would you overrule that precedent as a judge?**

Response: If confirmed as a District Judge, I would follow precedent and be powerless to overrule it.

**Explain whether you agree that "State sovereign interests . . . are more properly protected by procedural safeguards inherent in the structure of the federal system than by judicially created limitations on federal power." *Garcia v. San Antonio Metro Transit Auth.*, 469 U.S. 528, 552 (1985).**

Response: If confirmed as a District Judge, I would be bound to follow *Garcia* and all other precedent from the Supreme Court.

**Do you believe that Congress' Commerce Clause power, in conjunction with its Necessary and Proper Clause power, extends to non-economic activity?**

Response: Recent Supreme Court decisions have found limits on Congress's power to regulate non-economic activity under the Commerce Clause. *See, e.g., United States v. Morrison*, 529

U.S. 598 (2000); *United States v. Lopez*, 514 U.S. 549 (1995). These cases stand for the proposition that the Commerce Clause does not empower Congress to regulate non-economic activity with only an attenuated effect on interstate commerce. However, in *Gonzales v. Raich*, 545 U.S. 1 (2005), Justice Scalia noted that "Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." *Id.* at 37 (Scalia, J., concurring). If confirmed, I will follow precedent on the Commerce Clause decided by the Supreme Court.

**What are the judicially enforceable limits on the President's ability to issue executive orders or executive actions?**

Response: The Supreme Court held in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), that the President's powers to issue executive orders or take executive actions are circumscribed by the Constitution and acts of Congress. *See also Medellin v. Texas*, 552 U.S. 491, 524 (2008) (President's authority to act "'must stem either from an act of Congress or from the Constitution itself.'") (citation omitted). If confirmed, I will follow Supreme Court precedent on this issue.

**When do you believe a right is "fundamental" for purposes of the substantive due process doctrine?**

Response: The Supreme Court has found certain rights to be "fundamental" for purposes of the substantive due process doctrine when they are "objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted). If confirmed, I will follow Supreme Court precedent on these issues, without regard to any personal beliefs I might or might not have.

**When should a classification be subjected to heightened scrutiny under the Equal Protection Clause?**

Response: The Supreme Court has applied heightened scrutiny under the Equal Protection Clause when evaluating "suspect" classifications such as race and national origins. It has also stated that heightened scrutiny should be applied when a classification burdens a right that the Court has deemed fundamental.

**Do you "expect that [15] years from now, the use of racial preferences will no longer be necessary" in public higher education?** *Grutter v. Bollinger*, 539 U.S. 306, 343 (2003).

Response: The Supreme Court has recently addressed racial preferences in public higher education in *Grutter* and *Fisher v. University of Texas at Austin*, 133 S.Ct. 2411 (2013). If confirmed, I would follow the Supreme Court's precedent on this issue without regard to any personal views or expectations.

Exhibit B

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

DEC -4 1997

## DOCKET NO. 1200

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE FLAT GLASS ANTITRUST LITIGATION

## BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS AND LOUIS C. BECHTLE, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation presently consists of fifteen actions in the following federal districts: five actions each in the Western District of Pennsylvania and Northern District of Illinois; four actions in the District of Minnesota; and one action in the Northern District of California.[1] Three motions are pending before the Panel: in separate motions, defendant PPG Industries, Inc., (PPG) and plaintiffs in three Pennsylvania actions move to centralize, under 28 U.S.C. §1407, the actions in the Western District of Pennsylvania[2] for coordinated or consolidated pretrial proceedings; alternatively, the Pennsylvania movants suggest the Northern District of Illinois as transferee court; and plaintiffs in three Minnesota actions seek centralization in the District of Minnesota.[3] All responding parties agree that centralization is appropriate, but disagree regarding the appropriate transferee district for this litigation. In addition to the Pennsylvania, Illinois and Minnesota courts, the Northern District of California is also suggested as transferee district.

---

[1]  The Panel has been notified that additional actions have been recently filed: ten actions in the Western District of Pennsylvania and one action in the Northern District of California. These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 12 and 13, R.P.J.P.M.L., 147 F.R.D. 589, 596-97 (1993).

[2]  PPG originally suggested centralization in the Northern District of California, but, in its reply, stated that it now urged centralization in the Western District of Pennsylvania.

[3]  Plaintiff in the fourth Minnesota action switched its position at oral argument before the Panel from seeking centralization in the District of Minnesota to advocating the Western District of Pennsylvania as the transferee district.

- 2 -

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact concerning allegations that the defendant manufacturers[4] of flat glass conspired to fix prices and allocate business for flat glass in violation of a federal antitrust statute.  Centralization under Section 1407 in the Western District of Pennsylvania will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation, while accordingly being necessary in order to avoid duplication of discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

We are persuaded that the Western District of Pennsylvania is the most appropriate transferee forum for this litigation.  We note that i) five actions now before the Panel and an additional ten related actions are pending there, ii) several plaintiffs and all responding defendants have expressed support for centralization in this court; and iii) defendant PPG is headquartered there and documents and witnesses can be found there.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the actions listed on the attached Schedule A and pending outside the Western District of Pennsylvania be, and the same hereby are, transferred to the Western District of Pennsylvania and, with the consent of that court, assigned to the Honorable Donald E. Ziegler for coordinated or consolidated pretrial proceedings with the actions pending there.

FOR THE PANEL:

John F. Nangle
Chairman

---

[4]  PPG, Pilkington PLC, Libbey-Owens-Ford Co., AFG Industries, Inc., and Guardian Industries Corp. are named as defendant in all actions.  In addition, Asahi Glass Co. is named as an additional defendant in one Minnesota action and Ford Motor Co. is named as an additional defendant in one Western Pennsylvania action.

## Schedule A

MDL-1200 -- In re Flat Glass Antitrust Litigation

### Northern District of California

*Engineered Glass Walls, Inc. et al. v. Pilkington, PLC, et al.*, C.A. No. 5:97-20707

### Northern District of Illinois

*Grimes Auto Glass, Inc. v. Pilkington, PLC, et al.*, C.A. No. 1:97-4965
*D&S Glass Services, Inc. v. Pilkington, PLC, et al.*, C.A. No. 1:97-4997
*Thermal Chek, Inc. v. Pilkington, PLC, et al.*, C.A. No. 1:97-5153
*Orlando Auto Top, Inc. v. Pilkington, PLC, et al.*, C.A. No. 1:97-5661
*George Brown & Son Glass Works, Inc. v. Pilkington, PLC, et al.*,
    C.A. No. 1:97-5762

### District of Minnesota

*Mayflower Sales Co., Inc. v. AFG Industries, Inc., et al.*, C.A. No. 0:97-1870
*Cardinal IG v. Libbey-Owens-Ford Co., Inc., et al.*, C.A. No. 0:97-1871
*Beletz Bros. Glass Co., Inc. v. AFG Industries, Inc., et al.*, C.A. No. 0:97-1903
*Complast, Inc. v. AFG Industries, Inc., et al.*, C.A. No. 0:97-2012

### Western District of Pennsylvania

*A. Waxman & Co. v. PPG Industries, Inc., et al.*, C.A. No. 2:97-1523
*Mel's Auto Glass, Inc. v. PPG Industries, Inc., et al.*, C.A. No. 2:97-1569
*Brian S. Nelson v. Pilkington, PLC, et al.*, C.A. No. 2:97-1595
*Designer Windows, Inc. v. AFG Industries, Inc., et al.*, C.A. No. 2:97-1597
*Moses Moore All Glass Aspects, Inc. v. AFG Industries, Inc., et al.*,
    C.A. No. 2:97-1598

Exhibit C

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

DEC -1 94

PATRICIA C. HOWARD
CLERK OF THE PANEL

## DOCKET NO. 1039

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE RESIDENTIAL DOORS ANTITRUST LITIGATION

*Norwood Sash & Door Mfg. Co. v. Premdor Corp. et al.*, M.D. Florida, C.A. No. 8:94-975
*Tonka Building Supplies, Inc. v. Premdor Corp. et al.*, M.D. Florida, C.A. No. 8:94-1127
*Lumco Industries, Inc. v. Premdor Corp.*, E.D. Pennsylvania, C.A. No. 2:94-3744
*DuBell Lumber Co. v. Premdor Corp., et al.*, E.D. Pennsylvania, C.A. No. 2:94-4174

## BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR.,* WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, AND BAREFOOT SANDERS, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation consists of the four above-captioned actions pending in the Middle District of Florida or the Eastern District of Pennsylvania. Before the Panel is a motion, pursuant to 28 U.S.C. §1407, by the plaintiffs in the two Florida actions for transfer of the two Pennsylvania actions to the Middle District of Florida for coordinated or consolidated pretrial proceedings with the two actions pending there. All other parties agree upon centralization, but the plaintiffs in the Pennsylvania actions and Premdor Corp., one of the two defendants, support selection of a different district, the Eastern District of Pennsylvania, as transferee forum. The remaining defendant, Steves & Sons, Inc., takes no position on the question of transferee district.

On the basis of the papers filed and the hearing held, the Panel finds that the four actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Pennsylvania will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions i) share questions concerning the existence of a conspiracy to fix the prices of residential doors, and ii) are brought as class actions on behalf of overlapping classes. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to the question of class certification), and conserve the resources of the parties, their counsel and the judiciary.

Of the two districts in which constituent actions are pending, we are persuaded that the Eastern District of Pennsylvania is the preferable transferee forum. For a litigation nationwide in scope, Philadelphia appears to be more conveniently located for the parties, their counsel and

---

*Judge Merhige took no part in the consideration of this matter.

- 2 -

potential witnesses.  Furthermore, the Pennsylvania actions are assigned to a senior judge whose caseload burden is significantly less than that of the judge assigned to the two Florida actions.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the above-captioned actions pending in the Middle District of Florida be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Raymond J. Broderick for coordinated or consolidated pretrial proceedings with the two above-captioned actions pending there.

FOR THE PANEL:

John F. Nangle
Chairman

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

JUN 25 92

PATRICIA O. HOWARD
CLERK OF THE PANEL

## DOCKET NO. 928

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE CATFISH ANTITRUST LITIGATION

## BEFORE JOHN F. NANGLE, CHAIRMAN, S. HUGH DILLIN, MILTON POLLACK,* LOUIS H. POLLAK, ROBERT R. MERHIGE, JR., AND WILLIAM B. ENRIGHT, JUDGES OF THE PANEL

## TRANSFER ORDER

This litigation presently consists of six actions pending in two districts as follows:

| | |
|---|---|
| Northern District of Mississippi | 4 actions |
| Eastern District of Pennsylvania | 2 actions |

Plaintiffs in the four Mississippi actions move the Panel, pursuant to 28 U.S.C. §1407, for an order centralizing all actions in the Northern District of Mississippi for coordinated or consolidated pretrial proceedings. All defendants support this motion. The plaintiffs in the two Pennsylvania actions also support centralization, but they favor selection of the Eastern District of Pennsylvania as transferee forum.[1]

On the basis of the papers filed and the hearing held, the Panel finds that the six actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Northern District of Mississippi will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All actions are overlapping purported class actions, are brought against nearly the same defendants, and are based on allegations of a price fixing conspiracy to fix the price of catfish and catfish products. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certifications), and conserve the resources of the parties, their counsel and the judiciary.

---

*Judge Pollack took no part in the decision of this matter.

[1]Plaintiffs in three additional recently filed actions in the Northern District of Mississippi (two actions) and the Western District of Washington (one action) have also stated their support for centralization in the Mississippi forum. These three later filed actions were not formally before the Panel at the hearing held in this docket on May 29, 1992. In light of the Panel's decision in this docket, these actions will be treated as potential tag-along actions. *See* Rules 12 and 13, R.P.J.P.M.L., 120 F.R.D. 251, 258-59 (1988).

- 2 -

Plaintiffs in the Pennsylvania actions, arguing in support of selection of the Eastern District of Pennsylvania as transferee forum, place great reliance on the pendency of grand jury and criminal proceedings involving certain of the MDL-928 defendants in that district.  While the location of such proceedings has often been a key factor in the Panel's choice of transferee forum, it is not in and of itself determinative, especially where, as here, another district stands out as a clear nexus for the litigation.  We are persuaded that the Northern District of Mississippi is the more appropriate transferee forum for MDL-928.  We note that:  1) all defendants have their corporate headquarters and principal places of business in Mississippi, and the majority of their records and witnesses is likely to be found there; and 2) the Mississippi forum is the choice of the clear majority of parties to this docket (all defendants, plaintiffs in four of the six actions presently before the Panel, and the plaintiffs in three potential tag-along actions).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the actions listed on the attached Schedule A and pending in districts other than the Northern District of Mississippi be, and the same hereby are, transferred to the Northern District of Mississippi and, with the consent of that court, assigned to the Honorable Glen H. Davidson for coordinated or consolidated pretrial proceedings with the actions listed on Schedule A and pending in that district.

*FOR THE PANEL:*

*John F. Nangle*
*Chairman*

## SCHEDULE A

MDL-928 -- In re Catfish/Catfish Products Antitrust Litigation

### Eastern District of Pennsylvania

American Seafood, Inc., etc. v. Magnolia Processing, Inc., d/b/a
  Pride of the Pond, et al., C.A. No. 92-CV-1030

Levy World Limited Partnership v. Magnolia Processing, Inc., d/b/a
  Pride of the Pond, et al., C.A. No. 92-CV-1086

### Northern District of Mississippi

Rose's Wholesale Seafood, Inc. v. Magnolia Processing, Inc., et al.,
  C.A. No. 2:92-CV-026-D-O

State Fish Distributors, Inc. v. Magnolia Processing, Inc., et al.,
  C.A. No. 2:92-CV-020-D-O

Farm House Food Distributors, Inc. v. Magnolia Processing, Inc., et al.,
  C.A. No. 2:92-CV-030-D-O

Lemoyne Cold Storage, Inc., d/b/a Lemoyne Frozen Food Center v. Magnolia
  Processing, Inc., d/b/a/ Pride of the Pond, et al., C.A. No. 2:92-CV-031-D-O

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: CAPACITORS ANTITRUST
LITIGATION

MDL NO. 2574

## **PROOF OF SERVICE**

I hereby certify that on August 28, 2014, I electronically filed the Response of Plaintiff

eIQ Energy, Inc. To Motion for Transfer and Coordination Filed by Plaintiffs Chip-Tech, Ltd.

And Dependable Component Supply Corp. and Request for Transfer to the District of New

Jersey with the Clerk of the Panel using the Judicial Panel on Multidistrict Litigation's CM/ECF

system, which served notification of such filing to the e-mail addresses of all counsel of record

in this action on that date.

In addition, I hereby certify that on August 28, 2014 a true and correct copy of the

Response of Plaintiff eIQ Energy, Inc. to Motion for Transfer and Coordination was served on

the following via email:

Counsel for Plaintiff Chip-Tech, Ltd. and Dependable Component Supply Corp.

Joseph R. Saveri
Andrew M. Purdy
James G. Dallal
Ryan J. McEwan
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Tel: 415-500-6800
Fax: 415-395-9940
jsaveri@saverilawfirm.com
apurdy@saverilawfirm.com
jdallal@saverilawfirm.com
rmcewan@saverilawfirm.com

Solomon B. Cera
C. Andrew Dirksen
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, 2300
San Francisco, CA 94105
Tel: 415-777-2230
Fax: 415-777-5189
scera@gbcslaw.com
cdirksen@gbceslaw.com

Eric L. Cramer
Ruthanne Gordon
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: 215-875-3000
Fax: 215-875-4604
ecramer@bm.net
rgordon@bm.net

Vincent J. Esades
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Tel: 612-338-4605
Fax: 612-338-4692
vesades@heinsmills.com

Steven J. Greenfogel
LITE DEPALMA GREENBERG, LLC
1521 Locust Street, 7th Floor
Philadelphia, PA 19102
Tel: 267-519-8306
Fax: 215-569-0958
sgreenfogel@litedepalma.com

Joseph J. DePalma
LITE DEPALMA GREENBERG, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102
Tel: 973-623-3000
Fax: 973-623-0211
jdepalma@litedepalma.com

Counsel for Plaintiff Schuten Electronics, Inc.

George Farah
Matthew Ruan
COHEN MILSTEIN SELLERS & TOLL, PLLC
88 Pine Street
14th Floor
New York, NY 10005
gfarah@cohenmilstein.com
mruan@cohenmilstein.com

Kit A. Pierson
Brent W. Johnson
Laura Alexander
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W.
Suite 500, East Tower
Washington, DC 20005
Tel: 202-408-4600
kpierson@cohenmilstein.com
bjohnson@cohenmilstein.com
lalexander@cohenmilstein.com

Manuel John Dominguez
COHEN MILSTEIN SELLERS & TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel: (561) 833-6575
jdominguez@cohenmilstein.com

Counsel for Indirect Purchaser Plaintiffs

Mark P. Robinson, Jr.
Daniel S. Robinson
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
19 Corporate Plaza Drive
Newport Beach, California 92660
Tel: (949) 720-1288 (Telephone)
Fax: (949) 720-1292 (Facsimile)
mrobinson@rcrsd.com
drobinson@rcrsd.com

Donald H. Slavik
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
2834 Blackhawk Court
Steamboat Springs, Colorado 80487-2018
Tel: (949) 269-4284
Fac: (949) 720-1292
dslavik@rcrsd.com

Phillip Duncan
DUNCAN FIRM, P.A.
900 South Shackleford, Suite 725
Little Rock, Arkansas 72211
Tel: (701) 228-7600
Fax: (701) 228-0415
phillip@duncanfirm.com

Kent W. Emison
LANGDON & EMISON
1828 Swift, Suite 303
N Kansas City, Missouri 64116
Tel: (660) 259-6175
Fax: (660) 259-4571
kent@lelaw.com

Richard Lombardo
SHAFFER LOMBARDO SHURIN
911 Main Street, Suite 2000
Kansas City, Missouri 64105
Tel: (816) 931-0500
Fax: (816) 931-5775
Rlombardo@sls-law.com

William W. Heaton
HEATON & MOORE, P.C.
44 North Second Street, Suite 1200
Memphis, Tennessee 38103
Tel: (901) 526-5975
Fax: (901) 527-3633
wheaton@heatonandmoore.com

Counsel for Defendants Panasonic Corporation, Panasonic Corporation of North America, Sanyo Electric Co., Ltd., and Sanyo Electronic Device (U.S.A.) Corporation:

Jeffrey L. Kessler
Molly M. Donovan
Mollie C. Richarson
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: 212-294-6700
Fax: 212-294-4700
jkessler@winston.com
mmdonovan@winston.com
mrichardson@winston.com

Counsel for Defendants Taiyo Yuden (USA) Inc. and Taiyo Yuden Co., Ltd.:

Steven A. Reiss
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212-310-8000
Fax: 212-310-8007
steven.reiss@weil.com

Counsel for Defendants NEC TOKIN Corporation and NEC TOKIN America, Inc.:

George A. Nicoud III
GIBSON DUNN & CRUTCHER LLP
555 Mission Street
Suite 3000
San Francisco, CA 94105-0921
Tel: 415-393-8308
Fax: 415-374-8473
tnicoud@gibsondunn.com

Lucas C. Townsend
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, DC 20036-5306
Tel: 202-955-8500
Fax: 202-467-0539
ltownsend@gibsondunn.com

Counsel for Defendants KEMET Corporation and KEMET Electronics Corporation:

Roxane A. Polidora
Jacob R. Sorensen
Lindsay A. Lutz
PILLSBURY WINTHROP SHAW & PITTMAN LLP
Four Embarcadero Center
22nd Floor
San Francisco, CA 94111-5998
Tel: 415-983-1976
Fax: 415-983-1200
roxane.polidora@pillsburylaw.com
jake.sorensen@pillsburylaw.com
lindsay.lutz@pillsburylaw.com

Counsel for Defendants Hitachi Chemical Co., Ltd., Hitachi Chemical Company America,
Ltd. and Hitachi AIC, Incorporated:

Jonathan M. Jacobson
Chul Pak
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas
40th Floor
New York, NY 10019
Tel: 212-497-7726
Fax: 212-999-5899
jjacobson@wsgr.com
cpak@wsgr.com

Jeff VanHooreweghe
WILSON SONSINI GOODRICH & ROSATI
1700 K Street, NW
Fifth Floor
Washington, DC 20006
Tel: 202-973-8825
Fax: 202-973-8899
jvanhooreweghe@wsgr.com

Counsel for Defendant AVX Corporation:

Evan Nadel
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Tel: 415-432-6000
Fax: 415-432-6001
enadel@mintz.com

Bruce D. Sokler
701 Pennsylvania Avenue NW
Suite 900
Washington, DC 20004
Tel: 202-434-7300
Fax: 202-434-7400
bdsokler@mintz.com

Counsel for Defendant Rubycon Corporation and Rubycon America, Inc:

Djordje Petkoski
Leslie Kostyshak
Stephen Argeris
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: 202-955-1500
Fax: 202-778-2201
dpetkoski@hunton.com
lkostyshak@hunton.com
sargeris@hunton.com

Counsel for Defendant Elna Co., Ltd. and Elna America, Inc:

Heather S. Tewksbury
WILMER CUTLER PICKERING HALE AND DORR, LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 858-6134
Fax: (650) 858-6100
heather.tewksbury@wilmerhale.com

Thomas Mueller
Stacy Frazier
WILMER CUTLER PICKERING HALE AND DORR, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20009
Tel: 202-663-6000
Fax: 202-663-6363
thomas.mueller@wilmerhale.com
stacy.frazier@wilmerhale.com

Counsel for Defendant Vishay Intertechnology, Inc.:

Thomas F. Fitzpatrick
PEPPER HAMILTON LLP
333 Twin Dolphin Drive, Suite 400
Redwood City, CA 94065-1434
Tel: 650-802-3600
Fax: 650-802-3650
fitzpatrickt@pepperlaw.com

Barbara T. Sicalides
PEPPER HAMILTON LLP
3000 Two Logan Square
Philadelphia, PA 19103-2799
Tel: 215-981-4783
Fax: 215-981-4750
sicalidesb@pepperlaw.com

Counsel for Defendants Samsung Electro-Mechanics and Samsung Electro-Mechanics America, Inc.:

Derek Ludwin
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 200004-2401
Tel: 202-662-5429
Fax: 202-662-6291
dludwin@cov.com

Counsel for Defendant ROHM Semiconductor U.S.A., LLC:

Michael F. Tubach
Christina J. Brown
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Tel: 415-984-8876
Fax: 202-984-8701
mtubach@omm.com
cjbrown@omm.com

Kenneth R. O'Rourke
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Tel: 213-430-6000
Fax: 213-430-6407
korourke@omm.com

Counsel for Defendants TDK Corporation, TDK-EPC Corporation, and TDK U.S.A.
Corporation:

Scott A. Stempel
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel: 202-739-5211
Fax: 202-739-3001
sstempel@morganlewis.com

Counsel for Defendant United Chemi-Con, Inc.:

Joseph J. Bial
Charles F. Rule
Daniel J. Howley
CADWALDER WICKERSHAM & TAFT LLP
700 Sixth Street, NW
Washington, DC 20037
Tel: 202-862-2200
Fax: 202-862-2400
joseph.bial@cwt.com
rick.rule@cwt.com
daniel.howley@cwt.com

Counsel for Defendant Nichicon (America) Corporation:

Michael Martinez
K&L Gates LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602
Tel: 312-807-4404
Fax: 312-827-8116
michael.martinez@klgates.com

In addition, I hereby certify that on August 28, 2014, a true and correct copy of the

Response of Plaintiff eIQ Energy, Inc. to Motion for Transfer and Coordination was served on

the following by First Class Mail, postage prepaid:

Defendant Nippon Chemi-Con Corporation:

Mr. Tsuneo Ohta, President
United Chemi-Con Corporation
c/o CT Corp. System
818 West 7th Street, 2nd Floor
Los Angeles, CA 90017

*General Manager for Nippon Chemi-Con Corporation*

Defendant Nichicon Corporation:

Mr. Russell Edwards, President
Nichicon (America) Corporation
927 East State Parkway
Schaumberg, IL 60173
*General Manager for Nichicon Corporation*

Defendant ROHM Co., Ltd:

Mr. Satoshi Sawamura, President and Director
ROHM Semiconductor U.S.A., LLC
c/o CSC - Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

*General Manager for ROHM Co., Ltd.*

10

Defendant Matsuo Electric Co., Ltd. and Matsuo Electronics of America, Inc.:

Mr. Kenzaburo Kurata, President and CEO
Matsuo Electronics of America, Inc.
c/o Takanobu Okamoto
2134 Main Street #100
Huntington Beach, CA 92648

*General Manager for Matsuo Electric Co., Ltd.*

In addition, I hereby certify that on August 28, 2014, a true and correct copy of the

Response of Plaintiff eIQ Energy, Inc. to Motion for Transfer and Coordination was served on

the following by International Mail, postage prepaid:


Defendant Toshin Kogyo Co., Ltd.:

Toshin Kogyo Co., Ltd.
2-15-4, Uchikanda Chiyoda-ku
Tokyo,
Japan


I also certify that on the 28th day of August, 2014, a true and correct copy of the Response

of Plaintiff eIQ Energy, Inc. to Motion for Transfer and Coordination was served on the

following clerk of each district court where an affected action is pending, by First Class Mail,

postage prepaid:

Clerk, United States District Court for the Northern District of California
Office of the Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

11

Clerk, United States District Court for the District of New Jersey
Office of the Clerk
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07101

 */s/ Roberta D. Liebenberg*
Roberta D. Liebenberg
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
Facsimile: (215) 568-5872
rliebenberg@finekaplan.com

12